1
2
3
4
5                   UNITED STATES DISTRICT COURT

6                 SOUTHERN DISTRICT OF CALIFORNIA

7

8   FAIR HOUSING COUNCIL OF SAN              CASE NO. 05CV0072-LAB (CAB)
    DIEGO; JOANN REED; and MILTON
9   RODGERS, JAMEL RODGERS and               **ORDER:**
    ANTWAN RAMSEY, minors, by their
10  guardian ad litem, JOANN REED,           **(1)  OVERRULING OBJECTIONS
                                             TO REPORT AND
11                          Plaintiffs,       RECOMMENDATION RE FEES
                                             AND COSTS AWARD TO
12                                           PLAINTIFF REED;**

13       vs.                                 **(2)  ADOPTING
                                             RECOMMENDATION RE FEES
14                                           AND COSTS AWARD TO
                                             PLAINTIFF REED;**
15
                                             **(3)  OVERRULING IN PART AND
16                                           SUSTAINING IN PART
                                             OBJECTIONS TO
17                                           RECOMMENDATION RE
                                             DENIAL OF FEES AND COSTS
18  PEÑASQUITOS CASABLANCA                   AWARD TO PLAINTIFF FAIR
    OWNER'S ASSOCIATION,                     HOUSING COUNCIL; AND**
19
                            Defendant.       **(3)  AWARDING PORTION OF
20                                           CLAIMED COSTS TO PLAINTIFF
                                             FAIR HOUSING COUNSEL**
21

22                                           [Dkt Nos. 114, 115, 124, 125, 126]
            Following jury verdicts for plaintiffs in this fair housing civil rights action, the undersigned
23
    district judge referred the Applications for attorneys' fees and costs of plaintiff Joann Reed ("Reed")
24
    and of plaintiff Fair Housing Council of San Diego ("FHCSD") to Magistrate Judge Cathy Ann
25
    Bencivengo for a Report and Recommendation ("R&R").  Dkt Nos. 114, 115.  Judge Bencivengo
26
    received briefing from the parties on both Applications and filed R&Rs on August 31, 2007 and
27
    September 4, 2007.  Reed had requested an award of $347,198.75 in attorneys' fees  -- a figure
28

including a 25% contingent fee risk multiplier applied to a lodestar figure of $277,759.00 in claimed fees – and $16,001.51 in litigation costs and expenses. Judge Bencivengo recommends Reed's Application be granted, but without any contingent fee multiplier and with additional downward adjustments, in an award amount of $161,000 in attorneys' fees and $7,673.83 in costs and expenses, for a total award of $168,673.83. Dkt No. 122. She recommends the FHCSD's Application requesting an award of $64,809.69 in combined fees and costs be denied in its entirety. Dkt No. 123.

Defendant Penasquitos Casablanca Owner's Association ("PCOA") filed Objections to the recommended fee award to Reed. Dkt No. 124. Reed filed a Reply to the PCOA Objections (Dkt No. 131) and also filed her own objections to the R&R. Dkt No. 125. The PCOA filed a Reply to Reed's Objections. Dkt No. 127. The FHCSD filed Objections to the R&R regarding its fee Application. Dkt No. 126. The PCOA filed a Reply to the FHCSD's Objections. Dkt Nos. 128, 130 (duplicate filing). For the reasons discussed below, all objections to the Reed Application R&R are **OVERRULED**, and that R&R is **ADOPTED**. The Objections to the FHCSD's Application R&R are **OVERRULED IN PART** and **SUSTAINED IN PART**, and that R&R is **ADOPTED IN PART** and **REJECTED IN PART**.

**I.      BACKGROUND**

In July 2004, while she was a resident of the Casablanca condominiums, Reed complained of housing discrimination to the FHCSD, a non-profit organization with the mission to promote fair housing in San Diego County. She reported Kent MacDonald, a security guard PCOA employed, had sexually harassed her between February 2004 and July 2004, and her complaints to the PCOA had not resulted in corrective action.[1] Compl. ¶¶ 17, 13. The FHCSD investigated and concluded the sexual harassment allegations had merit. It also purportedly discovered the PCOA had rules and regulations that discriminated against families with children because of their familial status.[2] Compl. ¶ 18.

---

[1]   Reed had obtained a restraining order in June 2004, prohibiting MacDonald from contacting her, and MacDonald was arrested then returned to prison in part for his sexual battery of Reed after a September 2004 parole revocation hearing. Compl. ¶¶ 14-16.

[2]   Reed also alleged the PCOA retaliated against the Reed plaintiffs because of Reed's complaints about MacDonald's conduct, such as the imposition of different rules or conditions on the use and enjoyment of facilities by minor children like those living with Reed. None of those contentions was tried to a verdict.

Reed, three of her minor children or grandchildren who lived with her in 2004, and the FHCSD initiated this litigation in January 2005, naming only the PCOA as a defendant. They alleged nine causes of action :  First, discriminatory housing practices in violation of the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*; Second, unlawful business practices in violation of the California Fair Employment and Housing Act, CAL. GOV. CODE §§ 12927, 12955, *et seq.*; Third, unlawful business practices in violation of the Unruh Civil Rights Act, CAL. CIV. CODE0 § 51, *et seq.*; Fourth, violation of the Bane Civil Rights Act, CAL. CIV. CODE § 52.1, *et seq.*; Fifth, unfair business practices under CAL. BUS. & PROF. CODE §§ 17200, *et seq.* in the form of a pattern or practice of unlawful housing practices in connection with the operation of the PCOA; Sixth, assault and battery through its agent MacDonald, in violation of CAL. PENAL CODE §§ 227, 242, 245; Seventh, wrongful entry through its agent MacDonald, in violation of  CAL. CIV. CODE § 1954; Eighth, breach of the covenant of quiet enjoyment, in violation of  CAL. CIV. CODE § 1927; and Ninth, negligence causing injury through its agent MacDonald in breach of its duty to operate the Casablanca condominiums in a safe and lawful manner in that it negligently hired, trained, supervised, and retained MacDonald as its security guard employee.  The FHCSD joined in three of the nine causes of action alleged in the Complaint: the First, Second, and Ninth claims.

Plaintiffs sought monetary (compensatory and statutory) damages, declaratory relief, injunctive relief, and  punitive damages  Compl. pp. 9-10.  More than half the claims initially pled were abandoned or eliminated voluntarily or by court order before trial or jury deliberations, notably all the familial status discrimination claims. The case was tried solely on plaintiffs' civil rights and housing discrimination theories for the PCOA's conduct or omissions contributing to the sexual harassment of Reed.  The three minors and their claims were dismissed from the case after receipt of trial evidence.

The jury deliberated only on the federal fair housing and the state civil rights and fair housing claims.  The January 11, 2007 verdict found the PCOA liable under the fair housing claims, both state and federal, the Unruh Act (CAL. CIV. CODE § 51.9. Sexual Harassment), and the Bane Act (CAL. CIV. CODE § 52.1, interference by threats, intimidation, or coercion with the exercise or enjoyment of individual rights secured by federal or state Constitutions or laws).  The pleading was conformed to the findings after trial on plaintiffs' motion to substitute the Ralph Act (Cal. Civ. Code § 51.7(a)) for

1   the Bane Act mistakenly relied on in the Complaint, to preserve the statutory award component of the

2   verdict.  *See* Post-Trial Motions Order, Dkt No. 110.  Although a "pattern and practice" was alleged

3   and noted in the Pre-Trial Order as an issue to be tried, this court found no basis upon which to enter

4   an injunction.  As the court noted in the Order denying any equitable relief:

> [T]he court has expressed reservations throughout this litigation that the unique circumstances of the conduct giving rise to this lawsuit make it a close call whether the case even falls within fair housing policies and statues, including the federal fair housing law upon which federal jurisdiction was predicated.  The circumstances certainly fall outside the arena of the usual fair housing cases.  The facts of this case reveal no endemic or even isolated discriminatory practice rectifiable by a mandatory injunction of the kind plaintiffs seek.  The PCOA does not engage in offering housing, conditioning tenancies on any criteria, or perpetuating particular tenancies.  The court is unable to articulate any purpose related to the substance of this case to be served by granting any of the aspects of the injunctions requested.  Finally, "[i]n each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 542 (1987).  The PCOA board is a voluntary group whose service should not be unnecessarily burdened with requirements remote from their responsibilities predicated on an isolated instance of sexual harassment by a now-former employee unrelated to any condition of housing targeted by traditional fair housing concerns.

16  Dkt No. 110, 3:5-18.

17      As prevailing plaintiffs, both Reed and the FHCSD now move to recover their claimed

18  attorneys' fees and costs to prosecute this civil rights action.

19  **II.     DISCUSSION**

20          **A.     <u>Legal Standards</u>**

21              **1.     <u>Reports And Recommendations</u>**

22      A district judge "may accept, reject, or modify the recommended decision, receive further

23  evidence, or recommit the matter to the magistrate judge with instructions" on a dispositive matter

24  prepared by a magistrate judge proceeding without the consent of the parties for all purposes.  Rule

25  72(b); *see* 28 U.S.C. §636(b)(1).  A party objecting to the recommended disposition of the matter may

26  "serve and file specific objections to the proposed findings and recommendations," and "a party may

27  respond to another party's objections." Rule 72(b).  "[T]he court shall make a *de novo* determination

28  of those portions of the report or specified proposed findings or recommendations to which objection

1   is made." 28 U.S.C. §636(b)(1); United States v. Raddatz, 447 U.S. 667, 676 (1980) (when objections

2   are made, the court must make a *de novo* determination of the factual findings to which there are

3   objections).   The court also reviews *de novo* the magistrate judge's conclusions of law.   Gates v.

4   Gomez, 60 F.3d 525, 530 (9th Cir. 1995).   The statutory provision does not require that the district

5   court conduct some lesser review when no objections are filed.   Thomas v. Arn, 474 U.S. 140, 149-50

6   (1985); *but see* Robbins v. Carey, 481 F.3d 1143, 1146-47 (9th Cir. 2007) (the magistrate's conclusions

7   of law are reviewed *de novo*, regardless of whether any party has filed objections thereto).   "If neither

8   party contests the magistrate's proposed findings of fact, the court may assume their correctness and

9   decide the motion on the applicable law."   Orand v. United States, 602 F.2d 207, 208 (9th Cir. 1979).

10                              **2.     Attorneys' Fees And Costs Awards To Prevailing Parties**

11          Under the Fair Housing Act ("FHA"), "the court, in its discretion, may allow the prevailing

12   party, other than the United States, a reasonable attorney's fees and costs."   42 U.S.C. § 3613(c)(2).

13   The Fair Employment and Housing Act ("FEHA") similarly provides: "the court may, in its discretion,

14   award the prevailing party, other than the state, reasonable attorney's fees and costs."   CAL. GOV. CODE

15   § 12989.2.   The only material difference between the state and federal fee-shifting statutes pertinent

16   here concerns the availability under the state statutes of a multiplier to enhance an attorneys' fees award

17   for exceptional representation or other public purpose incentive or to compensate for contingent fee

18   risk.   Under the state fee-shifting statute, "a trial court should award a multiplier for exceptional

19   representation only when the quality of representation far exceeds the quality of representation that

20   would have been provided by an attorney of comparable skill and experience billing at the hourly rate

21   used in the lodestar calculation.   Otherwise, the fee award will result in unfair double counting and be

22   unreasonable. Nor should a fee enhancement be imposed for the purpose of punishing the losing

23   party."   Ketchum v. Moses, 24 Cal.4th 1122, 1139, 1136 (2001) ("every fee shifting statute must be

24   construed on its own merits").   The same factors already encompassed in the lodestar should not be

25   considered when determining an appropriate enhancement.   Id. at 1138.   Reed's counsel seek a

26   multiplier to enhance their claimed lodestar award by 25%.

27          "[A] trial court . . . has broad discretion to adjust the fee downward or deny an unreasonable

28   fee altogether."   Ketchum, 24 Cal.4th at 1138.   "[T]he definition of what is a reasonable fee applies

uniformly to all federal fee-shifting statutes." <u>Anderson v. Director, Office Workers Compensation Programs</u>, 91 F.3d 1322, 1325 (9th Cir. 1996). When a party prevails under both federal and state law, the district court may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk. *See* <u>Mangold v. PUC</u>, 67 F.3d 1470, 1479 (9th Cir. 1995). Although the district court has discretion in determining attorneys' fees awards, it must provide "some indication or explanation as to how it arrived at the amount of fees awarded." <u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899, 907 (9th Cir. 2002).

The lodestar approach to calculating attorneys' fee, pursuant to guidelines articulated in <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983), is presumed to result in a reasonable fee award. *See* <u>Rivera</u>, 477 U.S. 561.

> The "lodestar" is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. . . . After making that computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the <u>Kerr</u> factors that are not already subsumed in the initial lodestar calculation.[3]

<u>Morales v. City of San Rafael</u>, 96 F.3d 359, 363-64 (9th Cir. 1996) (citation and footnote omitted) (identifying twelve factors bearing on the reasonableness of an attorneys' fee award articulated in <u>Kerr v. Screen Guild Extras, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975); *but see* <u>Yahoo Inc. v. Net Games, Inc.</u>, 329 F.Supp.2d 1179, 1182 (N.D.Cal. 2004) (discussing the <u>Kerr</u> factors subsequently deemed "subsumed in the initial lodestar calculation," numbering at least five of the twelve), *citing* <u>Morales</u>, 96 F.3d at 363-64.

In civil rights cases, "Congress intended that statutory fee awards be 'adequate to attract competent counsel, but . . . not produce windfalls to attorneys.'" <u>City of Riverside v. Rivera</u>, 477 U.S. 561, 580 (1986) (citation omitted). The amount of an attorneys' fees award need not be proportionate to the amount of damages the plaintiffs actually recovered. *See* <u>Id.</u> at 580-85. Congress elected not to impose a rule restricting attorneys' fees to a sum "proportionate to the amount of damages a civil

---

3   "Among the subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation are: '(1) the novelty and complexity of the issues, (2) the special skill and expertise of counsel, (3) the quality of representation, . . . (4) the results obtained, . . . and (5) the contingent nature of the fee agreement." <u>Morales</u>, 96 F.3d at 364, n. 9 (citations omitted).

05CV0072

1   rights plaintiff might recover" to avoid windfalls.  Id. at 580; see also Combs, 285 F.3d at 908.

2   However, the amount of damages recovered is a one of several relevant factors the court should

3   consider in calculating the award.

4        "[T]he number of hours reasonably expended on the litigation multiplied by a reasonable hourly

5   rate," supported by evidence submitted by the party seeking the fee award, is the "starting point" for

6   the analysis.  Hensley, 461 U.S. at 433.  From that "objective basis" establishing "an initial estimate

7   of the value of a lawyer's services," the court may reduce the award in consideration of inadequate

8   documentation of hours and should "exclude from this initial fee calculation hours that were not

9   'reasonably expended.'"  Id. at 433-34.  The court properly considers such factors as whether the case

10  was overstaffed and the skill and experience of the lawyers.  Id. at 434.  The prevailing party's counsel

11  has a duty to exclude from a fee request "hours that are excessive, redundant, or otherwise

12  unnecessary."  Id. at 434.

13       The Hensley Court addressed the issue "whether a partially prevailing plaintiff may recover an

14  attorney's fees for legal services on unsuccessful claims" and sought "to clarify the proper relationship

15  of the results obtained to an award of attorney's fees."  Hensley, 461 U.S. at 426, 432.  "The product

16  of reasonable hours times a reasonable rate does not end the inquiry."  Id., at 434.  Other considerations

17  that may lead the court to adjust the fee up or down "includ[e] the important factor of the 'results

18  obtained.'"  Id.  "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though

19  he succeeded on only some of his claims for relief," in which case the court must address two

20  questions:  "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which

21  he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably

22  expended a satisfactory basis for making a fee award?"  Id.

23       "The extent of a plaintiff's success is a crucial factor in determining the proper amount of an

24  award of attorneys' fees."  Hensley, 461 U.S. at 440.  "A reduced fee award is appropriate if the relief,

25  however significant, is limited **in comparison to the scope of the litigation as a whole**."  Id. at 439-

26  40 (emphasis added) (declining to affirm a fee award, despite acknowledging the awarding court's

27  "commendable effort in explaining the fee award," because a finding the significant extent of the relief

28  plaintiffs obtained "clearly justifies the award of a reasonable attorney's fee" does not "answer the

1   question of what is 'reasonable' in light of that level of success").  "[T]he inquiry does not end with a

2   finding that the plaintiff obtained significant relief."  Id.

3       In Farrar v. Hobby, 506 U.S. 103, 115 (1992), the Supreme Court identified an exception,

4   applicable in "nominal damages" or "de minimis relief" cases, to the general requirements that govern

5   attorneys' fees award calculations, including the requirement that a lodestar first be calculated.  Farrar,

6   506 U.S. at 116-18; see Morales, 96 F.3d at 362-63 ("The Farrar exception, which would allow the

7   court to dispense with the calculation of a lodestar and simply establish a low fee or no fee at all, is

8   limited to cases in which the civil rights plaintiff 'prevailed' but received only nominal damages and

9   achieved only 'technical' success").  "'Nominal damages' is not limited to an award in the amount of

10  $1, but includes an award that may properly be classified as 'de minimis.'"  Morales, 96 F.3d at 363.

11          Whether the plaintiff's "success is purely technical or de minimis" . . .
            is determined by examining other factors in addition to the amount of
12          money damages awarded.  Primary among such other considerations is
            "the significance of the legal issues on which the plaintiff claims to
13          have prevailed" and the "public purpose" the plaintiff's litigation served.

14  Morales, 96 F.3d at 363, quoting Farrar, 506 U.S. at 117, 121 (O'Connor, J., concurring) ("The

15  difference between the amount recovered and the damages sought is not the only consideration").

16      A prevailing party may also recover as part of a fee award out-of-pocket expenses counsel

17  normally charge fee-paying clients.  Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005).  However, like

18  an attorneys' fees award, the expenses requested must be substantiated and reasonable in amount.

19  Harris v. Marhoefer, 24 F.3d 16, 20 (9th Cir. 1994).

20      **B.    Reed Application**

21          **1.    R&R Fees And Costs Award Recommendation**

22      Reed requests a costs award of $16,001.51 and actual attorneys' fees in the voluntarily-adjusted

23  amount of $254,799.00 (exclusive of the 25% state law multiplier Reed also requests), broken down

24  as charted in the R&R, for the services of two attorneys (Christopher Brancart, Esq. and Elizabeth

25  Brancart, Esq., billing at the rate of $350.00 per hour), two paralegals, and two litigation support

26  persons, supported by time records and the Declarations of both attorneys.  R&R 4:19-5:12.  The

27  PCOA does not challenge the reasonableness of any of the hourly rate, and this court adopts the R&R

28  recommendation to find the hourly rates are reasonable.

1    Only four of Reed's nine causes of action were litigated to jury verdicts, resulting in a

2  $47,000.00 money damages recovery.  Of that award, $10,000.00 was compensatory, the balance

3  statutory.  In opposing Reed's Application, the PCOA characterizes Reed's recovery as "extremely

4  limited," warranting an award of no fees or low fees under the <u>Farrar</u> exception to the lodestar

5  approach.  Judge Bencivengo found Reed, as a prevailing party in civil rights litigation, is entitled to

6  recover reasonable attorneys' fees, concluded her recovery was not so limited under the <u>Farrar</u>

7  exception as to warrant abandonment of the lodestar approach, and properly considered the "degree

8  of the plaintiff's overall success" as informing the question of "the reasonableness of a fee award."

9  R&R 3:7-25.  Judge Bencivengo ascertained the lodestar figure by multiplying the number of hours

10 reasonably expended in the litigation by a reasonable hourly rate, in consideration of certain factors

11 appropriate at either the "reasonable hours" determination or the "reasonable rate" determination: "(1)

12 the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality

13 of representation; (4) the results obtained; and (5) the contingent nature of the fee agreement."  R&R

14 4:4-8, *quoting* <u>Morales</u>, 96 F.3d at 364 *and citing* <u>Hensley</u>, 461 U.S. at 437.

15    Judge Bencivengo took the second step to apply equitable discretion to adjust the lodestar

16 amount "on the basis of other considerations."  R&R 4:8-9, *citing* <u>Lytle v. Carl</u>, 382 F.3d 978, 988 (9th

17 Cir. 2004).  The R&R substantiates the Brancart & Brancart firm itself deducted from its fees request

18 52.4 hours ($3,826.00) of the paralegal and litigation support time from the total hours expended on

19 the litigation.  With that deduction, as charted in the R&R, for the 29-months duration of this litigation,

20 up to and including the filing of Reed's reply brief in support of the fee Application "on behalf of all

21 four plaintiffs for all nine causes of action," counsel identified a total of 1,026.9 hours expended by

22 the attorneys and their support staff.  From that total, counsel also eliminated from the Reed fee

23 Application 36.8 hours of time attributed to "(1) the representation of the three minor children who

24 were not prevailing parties, (2) the dismissal of the retaliation claim, (3) the time spent solely on the

25 issue of punitive damages, and (4) time spent on jury instructions and verdict forms."  R&R 6:15-17,

26 *citing* E. Brancart Decl. at ¶¶ 22-27.  "Ms. Brancart then made a 5% across-the-board reduction of the

27 hours spent by counsel and staff in order to take into account any time that was spent in 'an

28 unnecessary, inefficient, or duplicative manner.'"  R&R 6:17-19, *citing* E. Brancart Decl. at ¶ 28.

1    In opposition to the Reed fee request, the PCOA objected, among other things, plaintiffs'

2  retention of counsel from Pescadero, California was unnecessary because qualified attorneys in San

3  Diego could have handled this case, arguing the time and expenses incurred for travel should be

4  deducted from the Application amount.  In response, Reed's counsel deducted an additional 74.6 hours

5  attributed to Christopher Brancart's travel time from Northern California to prosecute this case in San

6  Diego, leaving a total of 866,5 hours in claimed time, for a total adjusted actual fees request of

7  $254,799.00.  R&R 6:21-27.

8    The R&R recommends the court sustain the PCOA's objections to compensation for additional

9  blocks of attorney time claimed in the Reed Application.  The PCOA argues their time spent for

10  preparation and argument of post-trial motions should not be taxed to the defendant because Reed did

11  not prevail on the injunctive relief motions, and the motion to substitute the Ralph Act for the Bane

12  Act was necessitated solely by plaintiffs' own pleading error.  Judge Bencivengo recommends a

13  deduction of 41.4 hours at $350.00 per hour for those activities, reducing the fee claim by an additional

14  $14,490.00, to $240,309.00.  R&R 7:12-19.  Finally, in a well-reasoned discussion, in consideration

15  of "the circumstances of this litigation and the results obtained," the magistrate judge recommends the

16  court concur with the PCOA's challenge to the overall reasonableness of the hours claimed by

17  plaintiffs' law firm, even after the foregoing deductions, on grounds those hours cannot be reasonably

18  attributed to the representation of Ms. Reed on the four causes of action on which she prevailed,

19  observing those claimed hours are nearly double the total time spent by defense counsel, and are

20  "excessive and unreasonable."  R&R pp. 7- 9.  She recommends "the [adjusted] fee award be reduced

21  [additionally] by approximately one-third, to account for the time spent by counsel in pursuit of

22  abandoned claims and on behalf of non-prevailing parties, and in light of the award plaintiff received

23  on the remaining claims in the litigation, for a total fee award of $161,000.00."  R&R 9:14-17.

24    The Reed Application also seeks costs and expenses in the amount of $16,001.51, supported

25  by counsel's detailed report.  The R&R recommends the court deduct $7,615.68 in costs associated

26  with counsel's travel to San Diego from Pescadero, comprised of air fair, lodging, car rental, airport

27  parking, meals and the like, for the same reasons as Reed's counsel withdrew his travel time from the

28  fees Application when challenged as not fairly taxed to the defendant.  R&R 9:22-27.  Finally, the

1   R&R recommends reducing the $2,155.38 in copying and scanning expenses by one-third to account

2   for work done on behalf of the minors and on abandoned claims, as the Reed Application does not

3   reflect such deductions were made before those charges were totaled and submitted for recovery from

4   the PCOA.   The R&R thus recommends a total costs award in the amount of $7,673.83, for a

5   recommended combined fees and costs award to Reed of $168,673.83.

6               **2.      Defendant PCOA's Objections To R&R**

7           Defendant PCOA states:  "If the 'lodestar' method of calculating fees is to be utilized, this party

8   has no objection to the Report," commending the R&R's "thorough analysis" applying that

9   methodology.  PCOA Obj. 2:2.  However, the PCOA contends the lodestar method should not be used

10  on the facts and in the circumstances of this case.  Despite the R&R discussion of the Farrar exception,

11  the PCOA interprets the R&R as having proceeded as if the lodestar method is the sole and mandatory

12  standard for assessing the reasonableness of fees claimed by prevailing parties and urges the court

13  instead to exercise its discretion to disregard the lodestar method in order "to reach an award more

14  commensurate with the recovery, the reasonable position taken by the defendant and the lack of

15  success by the plaintiff on so many causes of action abandoned or dismissed."  PCOA Obj. 3:23-26.

16  The PCOA observes attorneys' fees awards are discretionary and limited, not mandatory, when a

17  plaintiff only partially prevails on her causes of action:  the court "in its discretion," "may allow" a

18  reasonable attorneys' fees and costs award to the prevailing private party in a civil action asserting

19  discriminatory housing practices.  42 U.S.C. § 3613(a), (c)(2).

20          Although a plaintiff may be considered a prevailing party under the "generous formulation" of

21  civil rights fee statutes, such a designation "brings the plaintiff only across the statutory threshold."

22  Hensley, 461 U.S. at 432 ("It remains for the district court to determine what fee is 'reasonable'").

23  Plaintiffs in Farrar sought an award of their attorneys' fees under 42 U.S.C. § 1988.  The Farrar Court

24  held that a civil rights plaintiff who wins even nominal damages is a prevailing party for purposes of

25  an attorneys' fees award.   Farrar, 506 U.S. at 573-74 (nominal damages, no less than compensatory

26  damages, effect a "material alteration of the legal relationship between the parties" as the plaintiff

27  becomes "entitled to enforce a judgment, consent decree, or settlement against the defendant" to force

28  the defendant to pay an amount of money not otherwise owed).  There is no dispute Reed is a

"prevailing party."  However, the PCOA argues Reed's recovery was quite limited in comparison to her multiple claims and settlement demands, notwithstanding the absence of any damages figure alleged in the pleadings.[4]

In her Reply to the PCOA's R&R Objections, Reed first asks the court to overrule the Objections on grounds the magistrate judge correctly selected the lodestar methodology for purposes of calculating a reasonable fee award, contending the results she obtained were neither minimal nor *de minimis* so as to justify an award of low or no fees.  Reed Reply 1:27-2:4.  Second, she asks the court to find the R&R refusal to consider settlement demands in setting a reasonable fee award should extend to statements made in settlement negotiations, as FED.R.EVID. ("Rule") 408 applies to both.[5] She also argues even if those negotiations may be relied on in setting a reasonable fee award, "defendant mischaracterizes those negotiations. . . ."  Reed Reply 2:5-13.  This court considers no settlement-related communications in reaching its decision.

### 3.   Reed's Objections To R&R

Reed filed her own Objections to the R&R, asking this court to award lodestar attorneys' fees and costs for Brancart and Brancart in the full amount of the Application:  $277,759.00, despite counsel's prior acquiescence in certain deductions during the R&R process.   Reed asserts the magistrate judge committed five errors.  First, she contends the magistrate judge failed to engage in the appropriate analysis for determining "limited success" under <u>Hensley</u>, 461 U.S. at 436.  Second, she objects the magistrate judge mistakenly concluded her limited success justified a one-third reduction in the adjusted lodestar, arguing the magistrate judge:   erroneously considered her

---

[4]   The R&R expressly disregarded settlement demands as improper considerations in valuing a case for these purposes.  R&R p. 3 n.1.  The PCOA acknowledges the R&R correctly does not consider confidential discussions occurring in settlement conferences,  but argues Reed herself  made those discussions "public" through her counsel's demand letters to defense counsel: "The numbers mentioned as to the settlement demand in [PCOA's] opposition to the motion for fees were taken from the recitation of the settlement conference discussions as recounted by correspondence from plaintiff's counsel to counsel for the defendant." PCOA Obj. 2:6-11.  To the extent PCOA seeks to have the court consider the amounts plaintiffs communicated to defendant in connection with settlement negotiations as a measure of the value of their claims for purposes of comparing their much lower recovery at trial as a rationale for abandoning the lodestar calculation methodology, this court rejects the proposal.

[5]   By its terms, Rule 408 makes inadmissible evidence of offers to compromise "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through prior inconsistent statement or contradiction. . . ."  Rule 408(a).

$47,000.00 jury award and denial of injunctive relief to be "limited success;" erroneously considered dismissal of the minor plaintiffs' claims as a factor justifying a significant reduction in the lodestar; erroneously considered dismissal of five of the nine causes of action as a factor justifying a lodestar reduction; erroneously considered plaintiffs' abandonment of the retaliation claims supports a finding of "limited success;" and had no reasoned basis for recommending the one-third reduction in the adjusted lodestar. Third, Reed objects the magistrate judge erred by eliminating counsel's travel time from the lodestar fees award. Fourth, she objects the magistrate judge erred by eliminating time spent by plaintiff's counsel in post-trial motions. Fifth, she objects the magistrate judge erred by refusing to grant the multiplier for contingent risk under state law.

The PCOA filed a Reply to Reed's Objections, contending her characterization of the R&R is misleading in that she "isolate[s] an element, cite[s] some authority on that isolated element, and claim[s] an error occurred," whereas the magistrate judge actually "evaluated all of the elements" and the "overall result." PCOA Reply 5:23-28. In consideration of the second prong of the <u>Hensley</u> analysis, the PCOA correctly contends: "All of these factors -- the failure to obtain injunctive relief, the dismissal of the claims of the minor Plaintiffs, the dismissal of five of the nine claims prior to trial, the abandonment of another claim prior to trial -- are part of the analysis of the overall relief obtained by the Plaintiff as compared to the time spent." PCOA Reply 3:15-28.

With respect to Reed's first objection, the PCOA disputes Reed's characterization the R&R fails to properly apply the <u>Hensley</u> approach. Portions of the R&R address the separate and distinct nature of certain of the claims and outline the reasons for the recommended reduction in the number of compensable hours. PCOA Reply 1:26-2:8. The PCOA argues: nothing in <u>Hensley</u> prohibits the recommended one-third reduction in the lodestar hours; Judge Bencivengo properly evaluated the significance of the overall relief Reed obtained in relation to the number of hours expended as part of the "reasonable hours" determination; the court is under no obligation to rely first and primarily on a <u>Hensley</u> analysis to arrive at a fee award figure; and <u>Hensley</u> in fact supports the exercise of the judge's discretion to reduce the number of compensable hours from the gross lodestar calculation to a reasonable total in light of the plaintiff's overall recovery. PCOA Reply 2:9-21.

\\

The PCOA contends Reed second objection to the R&R is premised on a flawed analysis of the evidence. In particular, the PCOA challenges Reed's reliance on illustrative recoveries in other cases, arguing the examples are not binding on this court and are distinguishable in consideration, among other things, of the equitable relief denied in this case but awarded in Reed's cited authority. The PCOA disputes that any "evidence" beyond the four corners of this case need be considered in the court's exercise of its discretion to calculate the reasonableness of a fee award to Reed. The PCOA argues: "in light of the relief obtained, it would be reasonable to deny fees altogether or award a contingent fee percentage of the award as reasonable fees." PCOA Reply 4:4-6, 3:16.

With respect to Reed's third Objection, the PCOA argues many competent attorneys within the County of San Diego could have handled this case, and Reed cites no authority to support a right "to retain counsel from out of the area at a greater cost and to compel the Defendant to pay those additional costs." PCOA Reply 4:9-17. With respect to Reed's fourth Objection, the PCOA argues elimination of the time spent on post-trial motions "is wholly consistent with the determination the Plaintiff did not prevail on injunctive relief, and the other post-trial motion was necessitated by counsel's error." PCOA Reply 4:20-23. With respect to Reed's fifth Objection, the PCOA argues a multiplier is always discretionary, and Reed fails to make the case a multiplier is warranted in this case, particularly as the R&R recommends a *reduction* in the claimed fees in consideration of the overall relief obtained. PCOA Reply 3:16. Although the PCOA argues the court is not compelled to follow the traditional lodestar approach in calculating fees -- urging this court to abandon that methodology in favor of considering "the reasonableness with which the case was defended, the limited success of the Plaintiff, and award either no fee or one representative of a contingent fee percentage of the recovery" (PCOA Reply 6:9-12) -- the PCOA does not quarrel with the manner in which the magistrate judge conducted the lodestar analysis, nor with the result of the lodestar analysis, if that method is ultimately applied to the Application.[6]  PCOA Reply 5:21-6:12.

---

[6]  The court disregards the PCOA's argument the reasonableness of the manner of its defense is an appropriate factor in the evaluation of an attorneys' fees award to prevailing plaintiffs. Its reliance on Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978) for the proposition the district court has discretion to deny fees to a prevailing party when the court believes the opposing party was not unreasonable or presented a meritless case is misplaced. PCOA Reply 2:19-3:4. That case addressed circumstances under which an award of attorneys' fees to a prevailing *defendant* may be appropriate, an analysis predicated on different

### 4.    <u>Disposition Of Reed's Fee Application</u>

Reed is a prevailing plaintiff, but she succeeded on only some of her claims for relief.  The court accordingly must address the two questions posited in <u>Hensley</u>:  "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  <u>Hensley</u>, 461 U.S. at 434.  As discussed below, the court answers the first question in the affirmative:  Reed failed to prevail, among other things, on any of her claims related to familial status discrimination and punitive damages and was denied any injunctive relief.  In answer to the second question, hours expended on the litigation is not an entirely satisfactory basis for the fee award, where the only alleged misconduct underlying any PCOA liability sustainable through trial emanated from isolated sexual harassment by one PCOA employee.  No invidious policy or practice of the homeowners' association was actually identified, all requested injunctive relief was denied, no punitive damages was colorably triable,  none of the independent claims alleged by the minor plaintiffs made it to the jury, and the compensatory damages recoveries reflect the jury's apparent assessment the scope of the harm was narrow and the nature of the underlying wrongdoing isolated.

.    The Special Verdict recorded the jury's findings the PCOA is liable "for violation of the federal Fair Housing Act or California Fair Employment And Housing Act" with respect to both plaintiffs, and the PCOA is liable for violation of the California Unruh Civil Rights Act and the California Bane Act with respect to Reed.  Dkt No. 94.  The jury awarded Reed $10,000.00 in compensatory damages, $12,000.00 in statutory damages under the Unruh Civil Rights Act, and $25,000.00 in statutory damages under the Bane (Ralph) Act.  Dkt No. 94.  The jury awarded the FHCSD $500.00 in compensatory damages.  Dkt No. 94.

The "Reed plaintiffs'" claims abandoned or dismissed in their entirety before trial were:  the Fifth Cause of Action for California unfair business practices; the Sixth Claim for assault and battery; the Seventh Cause of Action for wrongful entry; the Eight Cause of Action for breach of the covenant of quiet enjoyment; and the Ninth Cause of Action for negligence.  Dkt No. 1. In addition, the court

---

policies and "quite different equitable considerations."  <u>Christiansburg Garment</u>, 434 U.S. at 418-19.

1  did not permit the children's claims to reach the jury, and Reed did not pursue through trial any claim

2  of familial status discrimination.

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

8  Hensley, 461 U.S. at 440.

9  Some apportionment of the fee award on the basis of the plaintiff's success or failure on

10  particular discrete issues or claims, and based on the elimination of the three minor co-plaintiffs as

11  litigants is appropriate, as reasonably attempted in the R&R.  See Hensley, 461 U.S. at 437-38, 440

12  ("[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the

13  scope of the litigation as a whole").  The result here, however, does not warrant abandoning the

14  lodestar approach entirely.  Reed's compensatory recovery is neither "nominal" nor "de minimis" in

15  amount, and the court can devise no principled manner in which to calculate an alternative "low fee"

16  award in place of the lodestar methodology, as urged by the PCOA.  Any fixing of an attorneys' fees

17  award outside that lodestar structure would be wholly arbitrary, despite this court's perception the case

18  was overly broad in its charges and excessive in the theories of recovery pled in consideration of the

19  facts, and despite the court's concern plaintiff could and should have scaled the case back much earlier

20  in the process to avoid escalation of fees.  The court finds the R&R properly selected and applied the

21  lodestar method for calculating Reed's attorneys' fees award.

22  The court views the R&R lodestar analysis as conscientious, well-reasoned, with the

23  determination of recommended reductions in claimed fees and costs amply supported.  The PCOA's

24  Objections to the R&R expressly endorse Judge Bencivengo's analysis and result, if the lodestar

25  methodology is to be applied, as this court finds it should be.  With respect to Reed's Objections, the

26  court finds this action cannot be characterized as a "complex civil rights litigation involving numerous

27  challenges to institutional practices or conditions," the type of case the Hensley court observed can

28  have a vast range of possible success, so that a determination the plaintiff is a "prevailing party" may

1   "say little about whether the expenditure of counsel's time was reasonable in relation to the success

2   achieved" when the plaintiff succeeds in identifying only some unlawful practices or conditions.

3   Hensley, 461 U.S. at 436-37. The R&R reasonably justifies each recommended adjustment to Reed's

4   claimed attorneys' fees. The court rejects the requested contingent fee risk multiplier requested in

5   Reed's Application for the reasons cumulatively incorporated in this Order. *See* Ketchum, 24 Cal.4th

6   at 1138 ("[t]he trial court is not *required* to include a fee enhancement to the basic lodestar figure for

7   contingent risk," and "the party seeking a fee enhancement bears the burden of proof"). In

8   consideration of the procedural history of this case and the circumstances of the underlying misconduct

9   giving rise to the jury's finding the PCOA liable on fair housing and civil rights theories, for all the

10  foregoing reasons, the court **OVERRULES** the PCOA's Objections to the R&R, **OVERRULES**

11  Reed's Objections to the R&R, and **ADOPTS** the R&R reasoning and result with respect to Reed's

12  Application for fees and costs as a prevailing party in this civil rights action.

13      **C.      FHCSD Application**

14          **1.      R&R Fees And Costs Award Recommendation**

15          The FHCSD's Application seeks $59,600.00 in attorney's fees compensation for 388.25 hours

16  expended from a November 15, 2004 consultation with Reed regarding the Complaint through trial,

17  post-trial motions, and preparation of the fee Application. Dkt No. 115, Exh. 3. The FHCSD

18  submitted a costs bill in the amount of $5,209.69 for mileage reimbursement, deposition transcripts,

19  deposition copies, postage, taking of depositions, equipment at trial, a $1,500.00 consultant's fee, a

20  certified copy of MacDonald's criminal records, and FedEx costs. Dkt No. 115, Exh. 4. The FHCSD's

21  total request is for $64,809.69 in fees and costs.

22          Through the Complaint, the FHCSD sought injunctive relief, compensatory damages, and

23  punitive damages for having had to investigate and "counteract" PCOA's allegedly discriminatory

24  conduct, joining in three of the nine causes of action pled in the Complaint: the First Cause of Action

25  for violation of the federal Fair Housing Act; the Second Cause of Action for violation of the

26  California Fair Employment and Housing Act; and the Ninth Cause of Action for Negligence.

27  Through the time the Pre-Trial Order was entered, the plaintiffs continued to assert the PCOA

28  discriminated based on both familial status and sex. As discussed above, the familial status

1  discrimination claims and the punitive damages claims were not submitted to the jury, the trial

2  proceeded only on the sex discrimination allegations predicated on MacDonald's harassment of Reed,

3  and the court dismissed all claims for equitable relief thereafter.

4      As summarized by the FHCSD in seeking an award of its fees and costs, the "basis of FHCSD's

5  claim against the [PCOA] is based on two theories of relief described in jury instructions 12[7] and

6  23[8]."  Dkt No. 115 (Joinder And Separate Brief Regarding Fees) 2:2-7.  The FHCSD argues its tried

7  claims required it "to *first* prove the discriminatory housing practice (sexual harassment of Joann

8  Reed), and then it had to prove that either it diverted resources to the investigation of the complaint,

9  or that its mission was frustrated by the discriminatory act, or both."  Dkt No. 115, 2:2-7; FHCSD

10 Appl. 2:18-19 ("Not only did FHCSD had [*sic*] to prove up its own case (the diversion of resources

11 and/or frustration of mission) but it also had to prove Joann Reed's case").  "Specifically, FHCSD

12 sought damages for its investigation expenses and for the cost of its anti-discrimination advertising

13 to the residents of PCOA."  Dkt No. 115, 2:8-9.  The jury's $500.00 total damages award to the

14 FHCSD was, by the FHCSD's own reckoning, "most likely for FHCSD's anti-discrimination

15 advertising to the residents of PCOA," compensation amounting to about half its out-of-pocket

16 expenses in that endeavor.  Dkt No. 115, 2:10-11.

17     A civil rights plaintiff who recovers damages in any amount, whether compensatory or

18 nominal, associated with success on any significant issue in the litigation *which achieves some of the*

19 *benefit that plaintiff sought in bringing suit*, is a "prevailing party" for purposes of the attorneys' fees

20 provision in federal statutes such as the one relied on here.  Farrar, 506 U.S. 103 (1992).  The R&R

21 acknowledges the FHCSD is a prevailing party in this action, and pursuant to Hensley, 461 U.S. at

22

23     7  "Organizational Plaintiff.  Plaintiff Fair Housing Council of San Diego . . . is a non-profit

24 organization permitted to bring suit under the Fair Housing Act and California Fair Employment and Housing
Act on its own behalf for injury in its ability to carry out its efforts to assure equal access to housing and to

25 eliminate unlawful housing discrimination."  Jury Instruction No. 12.

26     8  "Damages:  Fair Housing Council.  In the case of plaintiff Fair Housing Council of San Diego,
damages may include compensation for:  (1) the effect of diverting its resources away from its other programs

27 and activities in order to identify, investigate and counter-act the defendants' unlawful conduct; and (2) the
frustration to its mission and purpose to promote equal opportunity in housing and the elimination of all forms

28 of illegal housing discrimination.  In determining the amount to award the Fair Housing Council, you may
consider the amount necessary to counter-act defendants' wrongdoing."  Jury Instruction No. 23.

429, a prevailing plaintiff in a federal civil rights case should recover attorneys' fees unless special circumstances would make an award of fees unjust. R&R 2:2-4. Nevertheless, the R&R recommends the FCHSD's Application be denied in its entirety on grounds: it received none of the injunctive relief or punitive damages it sought; the jury's compensatory damage award "did not even cover the expenses the FHCSD claimed it incurred in this matter;"[9] and the result it obtained "is a technical victory at best in comparison to the relief sought." R&R 3:14-22.

Judge Bencivengo noted, among other criticisms, the FHCSD failed to meet the "prevailing attorneys' burden of establishing entitlement to an award and [to] document the appropriate hours expended," citing Hensley, 461 U.S. at 437. R&R p. 4, n.1. The R&R also observes the Application "incorporates time spent by [the FHCSD's counsel] working for co-plaintiff Reed, such as preparing her for trial. . . . The FHCSD cannot recover for attorney time or expenses incurred to litigate the co-plaintiff's separate claims."[10] R&R p. 4, n.1. The R&R is also critical of the Application for failure to eliminate time spent on abandoned claims. This court notes the FHCSD's counsel does represent he removed from his fee statement "considerable time" he spent preparing witness Cynthia Blaine because plaintiffs ultimately determined her testimony would not be necessary. FHCSD Appl. 4:1-4. However, line items included in FHCSD's fee statement still refer to "Cynthia Blaine" in connection with contacting and preparing witnesses. *See* FHCSD Appl. Exhibit 3, pp. 2, 4. The court presumes

---

[9]   Based on the testimony of plaintiff's witness Mary Scott Knoll, the magistrate judge concluded a "damage award to fully compensate this plaintiff for its expenses was $1,000.00 at a minimum, yet the jury only awarded half that amount and the court awarded no equitable relief." R&R 3:17-21.

[10]   By way of justification, the Application represents: "FHCSD's counsel acted as Christopher Brancart's primary contact in San Diego." FHCSD Appl. 4:10-11. However, the PCOA's objection that Reed could have hired local counsel and avoided the travel time and costs associated with her retention of the out-of-town Brancart & Brancart firm persuaded the magistrate judge to recommend Reed's fees and costs recovery be reduced by those amounts, as it does this court. Moreover, this court extends that observation to the otherwise unnecessary need for a "local contact" for Reed and "liaison" for the Brancart firm, finding it would be unjust to shift liability to the defendant for associated fees and costs avoidable but for the geographic obstacles voluntarily assumed by Reed in retaining the Brancart firm. The extent to which FHCSD's counsel acted as "second chair to Christopher Brancart"(FHCSD Appl. 4:11-12) similarly strikes this court as an instance of "overstaffing" this case. Hensley, 461 U.S. at 435.. That overstaffing is similarly reflected in the double attendance of counsel for both Reed and the FHCSD at four depositions identified in the FHCSD Application and for which both seek recovery of fees. FHCSD Appl. 2:24-27.

1    the R&R's rejection of the portion of claimed fees for time the FHCSD spent on post-trial motions[11]

2    tacitly incorporates the same rationale as for the portion of time spent in that activity correspondingly

3    rejected in Reed's fee Application. Judge Bencivengo found "the recovery does not justify the award

4    of fees" to this plaintiff, and recommends the FHCSD's Application be denied in its entirety.  The R&R

5    makes no separate analysis of claimed costs.

6                    **2.    FHCSD's Objections To R&R And PCOA's Reply**

7            The FHCSD raises four Objections to the R&R.  First, it contends the R&R "misstates the basis

8    of FHCSD's claim."   FHCSD Obj. 1:24.   "While it is true that FHCSD pled familial status

9    discrimination, and sought to change rules, policies, practices or procedures that had a discriminatory

10   effect on families with children, FHCSD's damages were the result of [PCOA's] failure to prevent and

11   protect Plaintiff Joann REED from sexual harassment suffered at the hands [of] Kent MacDonald, its

12   employee." FHCSD Obj. 1:24-28.  That description is indistinguishable from Reed's personal claims.

13   It also deviates from the Complaint allegation that the FHCSD's damages arising from the PCOA's

14   alleged "discriminatory housing practices" were associated with the PCOA's "promulgat[ing] and

15   enforc[ing] rules and regulations that discriminate against families with children because of their

16   familial status," and  "the Fair Housing council designed and implemented an education and outreach

17   project, providing Casablanca residents with information regarding their fair housing rights." Compl.

18   ¶¶ 18-19.

19           In support of its Application, the FHCSD characterizes its claimed time and expenses "acting

20   as REED's co-counsel" as "time spent on FHCSD's claims," contending it had to establish the

21   discriminatory acts, *i.e.*  "the sexual harassment  by Kent MacDonald, and the failure of PCOA to

22   respond to REED's complaints," in order to "establish a basis for which it would recover" damages,

23   an essential component of its Article III standing to sue.  FHCSD Obj. 2:3-7.  However, Reed was

24   separately represented by two attorneys in the Brancart and Brancart firm, and it does not appear from

25   anything before the court the FHCSD' assistance in the preparation of Reed's case was pursuant to any

26

27   _____

28        [11]  "Mr. Treglio also consulted with various other members of Brancart & Brancart by email and phone over various matters as they came up.  In particular, Mr. Treglio was in regular contact with Ms. Elizabeth Brancart regarding the post-trial motions."  FHCSD Appl. 3:24-27.

1    formal co-counsel relationship for billing or fee award purposes.  The court calculates fee recoveries

2    based on counsel's work on behalf of its own client, alleged to be a separately injured party.

3        The FHCSD disputes it received only a nominal award.  Judge Bencivengo acknowledged a

4    damages award adequate to fully compensate it for its expenses was "$1,000 at a minimum," so the

5    jury's award of $500.00 represents half the FHCSD's actual damages.  On that basis, the FHCSD

6    distinguishes Farrar, 506 U.S. 103 , where a civil rights plaintiff "prevailed" but received only nominal

7    damages and achieved only "technical" success.  *See* Morales, 96 F.3d at 362 (limiting invocation of

8    the Farrar rule to such cases).  The Farrar Court defines as "purely technical" or "de minimis" a victory

9    evidencing:  (1) a substantial difference between the damages sought and the damages awarded, (2)

10   the legal issue on which plaintiff prevails is relatively unimportant, and (3) the litigation serves no

11   discernible public purpose.  Farrar, 506 U.S. at 121-22 (O'Connor, J., concurring).  The FHCSD argues

12   "nominal" damages are those in name only, "a mere token or 'trifling,'" which highlights the plaintiff's

13   failure to prove actual, compensable injury.  FHCSD Obj. 2:19-22, distinguishing its recovery of 50%

14   of its claimed actual damages.  The FHCSD argues the magistrate judge erred in denying recovery of

15   any of its fees and costs as distinguishable from those principles.

16       However, the FHCSD fails to factor in the effect on the award analysis of its failure to prevail

17   on its additional claims for injunctive relief and punitive damages.  The court appropriately considers

18   those unsuccessful claims associated with its exercise of discretion under fee-shifting statutes when

19   evaluating the results of the litigation as a whole.  The FHCSD's compensatory damages in this

20   litigation were the relatively modest outlay of "advertising" funds, only half of which the jury awarded,

21   with no other recovery of any kind on any of the legal theories advanced.  Moreover, the legal issue

22   on which it prevailed was "relatively unimportant" for that institution or the public, given the isolated

23   nature of MacDonald's sexual harassment of Reed, and prevailing on the issue advanced no public

24   purpose in any broader remedial sense inasmuch as the PCOA was not found to have discriminatory

25   policies or practices this litigation could redress.

26       Second, the FHCSD objects its costs are taxable under Fed.R.Civ.P. 54(d):  "Except when

27   express provision therefore is made either in a statute of the United States or in these rules, costs other

28   than attorneys' fees shall be allowed as of course to the prevailing party unless the court directs

1   otherwise."  It argues the R&R lacks sufficient justification to recommend denial of the FHCSD's

2   claimed costs.  FHCSD Obj. 3:2-13.

3          Third, the FHCSD disputes as error the R&R finding it failed to meet its burden of proof to

4   establish hours reasonably expended in pursuit of claims on which it prevailed, arguing the R&R

5   overstates the amount of time spent on familial status issues.  FHCSD Obj. 4:10-11.  It represents its

6   initial investigation made two findings: that the PCOA had allowed MacDonald to harass Reed on the

7   basis of her sex, and that the "PCOA had a few rules that appeared to place an unreasonable burden

8   on families with children."  FHCSD Obj. 3:22-25.  It further represents the FHCSD deemed the sexual

9   harassment "to be the most serious and lead [*sic*] to FHCSD's decision to litigate," and the flyers it sent

10  to PCOA residents "to counteract the discriminatory effect of the PCOA's failure to take action only

11  discussed sexual harassment issues, not familial status discrimination."  FHCSD Obj. 3:26-4:2.  It

12  characterizes its claim for familial status discrimination as "secondary" to the sexual harassment claim,

13  and it "withdrew its claim for familial status discrimination" when it was "clear that PCOA would not

14  seek settlement," a representation enigmatically contrary to plaintiffs' continued pursuit of those other

15  pled claims to the time of trial.  FHCSD Obj. 4:3-7.

16         The FHCSD also contends the R&R erred in finding it failed to limit the fees claimed for work

17  done to claims on which it prevailed.  In support of that contention, the FHCSD represents its counsel

18  "did, in fact, redact the time spent on the familial status discrimination," and a review of attorney

19  James M. Treglio's Fee Statement reveals it "makes no mention of any time spent on familial status

20  claims."  FHCSD Obj. 4:10-15.  However, nor does it make any mention of particular time spent on

21  *any* discrete claim other than a small amount of time specifically identified as spent reviewing records

22  or timeline for "post complaint harassment of Reed."  *See* Dkt No. 115, Ex. 3.  In addition, the FHCSD

23  argues "[if] the Magistrate Judge wished to deny fees to the FHCSD for time spent on [the issue of

24  equitable relief], that would have been easily accomplished by reviewing the billing statement . . . and

25  cutting all post-judgment time."  FHCSD Obj. 4:17-20.  The latter suggestion, however, takes no

26  account of the time presumably spent in the process of evaluating whether to bring such claims in the

27  Complaint, discovery in support of those claims, and other activity necessarily undertaken to prepare

28  to try the equitable relief allegations beyond mere post-trial motion preparation time.

Fourth, the FHCSD objects the R&R "leads to a grossly inequitable result." FHCSD Obj. 4:23. It relies on statements in both its own and Reed's Fee Applications to insist "FHCSD's counsel, James Treglio, acted as Christopher Brancart's co-counsel," and "[t]o that end, James Treglio spent a great deal of time preparing Plaintiffs' witnesses for trial . . . [and] was the only attorney for Plaintiffs present during the depositions of" six named witnesses. FHCSD Obj. 4:23-28. The FHCSD makes the observation (alarming to this court): "Without FHCSD's assistance, Joann **REED's costs and fees [sought through the Reed Application in the amount of $347,198.75, including Reed's claimed 25% multiplier for contingent fee risk] would have risen dramatically**," as Reed's counsel is "more experienced than James Treglio" and has a correspondingly higher hourly fee. FHCSD Obj. 4:28-5:2 (emphasis added). "This appointment of co-counsel was designed specifically to reduce costs," so that a denial of any recovery of FHCSD's fees allegedly causes "PCOA [to] gain[] the benefit of a reduction of costs by Plaintiff REED without the cost of paying for FHCSD's fees." FHCSD Obj. 5:3-6. However, neither plaintiff presents evidence of the FHCSD's "appointment as co-counsel" to Reed, and Mr. Treglio presents his fees request solely on behalf of his client, the FHCSD (other than styling the request as also a "joinder" in the Reed Application, purporting to incorporate her Application by reference and emphasizing the "FHCSD has an identical position regarding the facts and law" as does Reed). Dkt No. 115, p. 1.

Finally, the FHCSD argues the R&R "places too much value on the amount of the recovery," whereas the jury's verdict purportedly "clearly" found "(1) FHCSD was injured by PCOA's ***practices***" and "(2) FHCSD was awarded compensation for those injuries." FHCSD Obj. 5:7-15 (emphasis added), *citing, inter alia,* Rivera, 477 U.S. at 574 and Combs, 285 F.3d at 908 for the proposition attorneys' fees in civil rights cases need not be proportionate to the amount of damages a plaintiff recovers. For all those reasons, the FHCSD requests the court reject the R&R and award its fees and costs as claimed in its Application.

The PCOA filed a Reply to the FHCSD's Objections to the R&R, again emphasizing any award of attorneys' fees is wholly discretionary. Farrar, 506 U.S. at 115 (affirming denial of any attorneys' fee award under the civil rights statute where plaintiffs sought millions in compensatory damages and recovered nominal damages of one dollar, confirming the court has discretion to award no fees without

05CV0072

1    reciting the several factors bearing on reasonableness); *see also* <u>Fischer v. SJB-P.D., Inc.</u>, 214 F.3d

2    1115, 1119, 1121-22 (9th Cir. 2000) (an Americans With Disabilities Act case confirming the court

3    can award "low fees or no fees" without reciting the twelve <u>Kerr</u> factors, but concluding in that case

4    the plaintiff obtained more than a "technical victory," and so was entitled to a fee award the court

5    should have computed as a lodestar figure).

6         First, the PCOA represents the FHCSD effectively acknowledges it "learned in their

7    investigation there was no issue of housing discrimination in PCOA, once Kent McDonald, the sexual

8    harasser, was terminated and once Joann Reed, the victim, moved out of the condominium complex"

9    at the end of 2004, and "[t]here was no continuing course of conduct to enjoin or prohibit," with the

10   "end result of this case demonstrat[ing] there was no basis for injunctive relief whatsoever." PCOA

11   Reply 2:3-9. That characterization is borne out by the proceedings before, during, and after trial, and

12   undermines the FHCSD's representation the PCOA's "practices" were the cause of the FHCSD's injury.

13   The PCOA describes the continued presence of the FHCSD in this litigation as a "tag-along"

14   undertaking. PCOA Reply 2:10-11. The PCOA disputes the FHCSD is entitled to recover any fees

15   for "time spent acting as Reed's co-counsel" in the absence of any authority approving such a recovery

16   by counsel for one party who merely represents it was also acting informally as co-counsel for another

17   party. PCOA Reply 2:12-16. The PCOA also contends the <u>Farrar</u> factors are present in this case: (1)

18   there was a substantial difference between the damages sought and those awarded; (2) the legal issue

19   on which the FHCSD prevailed was unimportant; and (3) the litigation served no discernable public

20   purpose.[12] PCOA Reply 3:9-13. The PCOA acknowledges although the legal issue "arising out of a

21   homeowners association employee's actions may not be unimportant, that issue was not dependent

22   upon anything FHCSD did in this case," and the "issue was pursued and briefed by Reed's counsel,"

23   rendering "the legal issue pursued by FHCSD . . . nonexistent." PCOA Reply 3:20-25.

24   \\

25

26   _____

27   [12] "FHCSD was proceeding after [*sic*] injunctive relief. They were attempting to obtain some form of relief which would benefit 500 other members of the PCOA condominium complex. They received none of that. While the 'damages' of a monetary nature were minimal at best, the pursuit of injunctive relief was paramount. Furthermore, FHCSD was pursuing punitive damages, which were not awarded." PCOA Reply 3:13-19.

28

1    Second, the PCOA urges the court to adopt the R&R recommendation, contending:  "This is

2    a perfect example of a situation in which FHCSD should never have been involved.  Certainly, their

3    role was essentially nothing more than a tag-along role with Joann Reed."  PCOA Reply 4:11-14.

4    While such an argument can be made given the claims made and results obtained, this court assesses

5    the costs issue differently and separately from the attorneys' fees issue, as discussed below.

6    Third, the PCOA suggests the FHCSD's objection regarding treatment of time spent on the

7    familial status issues is misplaced because the R&R recommends *no* fees be awarded, without

8    discussing any apportionment of time among issues.  As part of its <u>Hensley</u> analysis in reaching that

9    conclusion, the R&R merely alludes to the fact the Complaint states familial status discrimination

10   allegations abandoned without jury deliberation on the issues.  PCOA Reply 4:17-5:2.

11   The PCOA characterizes the FHCSD's fourth objection as "demonstrat[ing] the fallacy of the

12   request for fees," illustrating the "FHCSD was riding the coattails of Reed's counsel," and devoid of

13   any authority for the proposition one attorney is entitled to recover fees "for acting as 'co-counsel' to

14   another attorney" representing a different party.  PCOA Reply 5:5-9.  The PCOA contends the only

15   "inequity" associated with the FHCSD's fees and costs requests would be to grant the Application.

16   "They absolutely established by their own investigation there was no basis for FHCSD to sue PCOA

17   for discrimination," but "they were not satisfied with their own investigation and determined to pursue

18   a lawsuit seeking damages, injunctive relief, and punitive damages," then "lost on all counts except

19   for a very minor amount of damages."[13]  PCOA Reply 5:12-17.

20                    **3.    <u>Disposition Of FHCSD Application</u>**

21   The court finds the PCOA's summary of the FHCSD's relationship to Reed's Complaint and

22   its assessment of the FHCSD's participation through trial and post-trial proceedings to be pertinent to

23   the decision whether to adopt the R&R recommendation the FHCSD be denied an award of any of its

24   claimed attorneys' fees:

25              [T]his litigation from the standpoint of FHCSD served no purpose
            whatsoever, discernable or otherwise.  This was purely an isolated
26

27 ─────────────────────────

28        [13]  The PCOA also contends, in reliance on <u>Christiansburg</u>, denial of a fees and costs award to FHCSD
     is proper and within the discretion of the court because the "PCOA's defense of this case as to FHCSD was
     meritorious."  PCOA Reply 5:18-19.  However, the court distinguishes <u>Christiansberg</u>.  *See* fn 7, above.

1          situation in which a homeowners association hired a property patrol
individual who ended up sexually harassing one of the occupants of a
2   condominium in the complex. Once that individual was terminated and
the victim moved from the complex, there was absolutely no
3   discernable purpose for this litigation outside any compensation to Ms.
Reed.  FHCSD proved by its own investigation there was no insidious
4   [*sic*] discrimination.

5   PCOA Reply 3:26-4:6.

6         The court finds Reed had her own counsel to prove up her case, and the "diversion of

7   resources" or "frustration of mission" damages peculiar to the entity plaintiff's was found by the jury

8   to be compensable in the amount of just $500.00, half its claimed expenses to prepare and distribute

9   anti-discrimination materials at the condominium complex.  To the extent the FHCSD suggests the

10  court should fold its attorneys' fees claimed for advancing Reed's trial preparation into the "diversion

11  of resources" portion of "its own case," the court notes authority prohibits a party's escalation of

12  expenditures recovery of which may then constitute a "windfall" if awarded post-trial as fees and costs

13  taxed against the losing party.  *See* Rivera, 477 U.S. at 580-85.  As noted above, this court perceives

14  the case appears to have been overstaffed.  *See* FHCSD Appl. 4:5-7 ("Except for the separate discovery

15  responses, and the preparation of Mary Scott Knoll, counsel for FHCSD acted, in all intents and

16  purposes, as second chair to Christopher Brancart, who was lead counsel in this case," observations

17  silent on the role of the *second* attorney in the Brancart and Brancart firm who also claims fees in

18  prosecuting Reed's case as co-counsel).

19        In evaluating an award of a plaintiff's attorneys' fees in a civil rights case, the court must

20  consider the significance of the legal issues on which the party prevailed and the public purpose served

21  by litigation of its claims.  *See* Morales, 96 F.3d at 362-63.  This case did not involve a defendant's

22  institutional policy or a pattern and practice that only a lawsuit could stop.  By all evidence elicited at

23  trial, the only housing discrimination imputable to the PCOA was its employment of MacDonald as

24  a security guard and delay in acting on Reed's complaints.  The sexual harassment misconduct was

25  personal to him.  He was not implementing any identified  PCOA policy.  Plaintiffs established no

26  intentional conduct or improper motive of the PCOA, distinguishing this action from civil rights cases

27  exposing widespread or inveterate discrimination.  *See, e.g.*, Rivera, 477 U.S. 561 (Chicano plaintiffs

28  successfully sued city's police force and individual officers alleging civil rights violations arising from

1  the racially discriminatory manner of defendants' conduct and recovered their attorneys' fees under 42

2  U.S.C. § 1988); Combs, 285 F.3d 899 (awarding attorneys' fees to nonprofit fair housing organization

3  in its successful suit against an apartment complex owner who engaged in intentional and repeated

4  racially discriminatory housing practices as proven by the organization's "testers").

5       The FHCSD disputes the R&R's characterization of its recovery as only a "technical" victory,"

6  arguing the 50% recovery of the $1,000.00 in damages sought cannot be construed as "so insignificant"

7  that attorneys' fees should be denied in their entirety on that basis. *See* Farrar, 506 U.S. at 113-114

8  (holding "the prevailing party inquiry does not turn on the magnitude of the relief obtained" in

9  response to the question "whether a nominal damages award is the sort of 'technical,' 'insignificant'

10  victory that cannot confer prevailing party status").   Once prevailing party status is conferred, the

11  required inquiry for the proper exercise of the court's discretion in awarding attorneys' fees is triggered.

12  "'[T]he *degree* of the plaintiff's success' does not affect 'eligibility for a fee award.'" Id at 114 (citation

13  omitted); *see* Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) ("Although the size of the

14  relief may impact the size of the eventual fee award, it 'does not affect "*eligibility*" for a fee

15  award. . . ."'") (citations omitted).   Based on that authority, under the Fair Housing Act statutory fee

16  award provision, the FHCSD is "eligible" for a fee award.

17       However, applying the Hensley guidelines, to determine whether the court should exercise its

18  discretion to order an award to an "eligible" plaintiff and, if so, what fee amount would be

19  "reasonable," "the degree of the plaintiff's overall success goes to the reasonableness' of a fee award."

20  Farrar, 506 U.S. at 114 (citation omitted) ("the degree of success obtained" is "the most critical factor"

21  in the reasonableness analysis).   "In some circumstances, even a plaintiff who formally 'prevails' . . .

22  should receive no attorney's fees at all." Id. at 115.   If "a plaintiff has achieved only partial or limited

23  success, the product of hours reasonably expended on the litigation as a whole times a reasonable

24  hourly rate may be an excessive amount." Hensley, 461 U.S. at 463; *see* Farrar, 506 U.S. at 114.

25  Although the court concurs with the FHCSD the $500.00 the jury awarded should be construed as

26  "compensatory" rather than "nominal" damages, the admonition that a lodestar approach is not always

27  appropriate seems applicable here.   The court's discretion in the fixing of fees in such circumstances

28  must be exercised giving "primary consideration to the amount of damages awarded as compared to

the amount sought." <u>Farrar</u>, 506 U.S. at 114, *quoting* <u>Rivera</u>, 477 U.S. at 585.  The *nature* of the damages awarded to the FHCSD similarly informs the exercise of that discretion:  "the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness. . . or multiplying 'the number of hours reasonably expended . . . by a reasonable hourly rate.'"  <u>Id.</u> at 115, *citing* <u>Hensley</u>, 461 U.S. at 430, n.3, 433.  The court acknowledges the presumption in civil rights cases a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust, but the court retains discretion to deny attorneys' fees.  *See* <u>Hensley</u>, 461 U.S. at 429; *see also* <u>Fischer</u>, 214 F.3d at 1119, n.2.  The court finds special circumstances militate against shifting the burden of FHCSD's attorneys' fees, in addition to those of Reed's counsel, to this defendant, in particular but not exclusively the overlap and overstaffing in the preparation of this case, the very belated paring down of the scope of the issues to be tried predicated on one PCOA employee's sexual harassment of Reed, and the results obtained compared to the litigation as a whole.

As noted in the R&R, the prevailing attorneys bear the burden of establishing entitlement to an award and must document the reasonableness of hours expended.  R&R p. 4, n.1, *citing* <u>Hensley</u>, 461 U.S. at 437.  The FHCSD's Application seeks "fees in an amount more than 100 times greater than its recovery, makes no reductions for time spent on dismissed and unsuccessful claims," and "incorporates time spent by [FHCSD's counsel] working for co-plaintiff Reed" on her separate claims.  R&R p. 4, n.1.  The "[A]pplication does not even attempt to meet its burden to establish hours reasonably expended in pursuit of claims upon which it prevailed."  <u>Id.</u>  While compensation for attorneys' fees is not strictly limited to those incurred solely on matters on which the prevailing party succeeded, nevertheless whether an award is reasonable, or whether it is reasonable to make the award, depends upon a comparison of "the scope of the litigation as a whole" to the relief obtained..  <u>Hensley</u>, 461 U.S. at 439-40, 429.

The court adopts the R&R finding an award of the FHCSD's claimed attorneys' fees would be "unjust," and exercises its discretion to deny the FHCSD any recovery of fees.  The FHCSD's pursuit of this litigation accomplished little for itself or its mission.  Reed's damages recovery was predicated on her personal claims of sexual harassment by a PCOA employee.  MacDonald was no longer

1   employed by the PCOA, and she had moved from the Penasquitos Casablanca condominium complex

2   years before this case was tried.  The FHCSD's counsel may have assisted Reed in obtaining her

3   damages recovery, but she recovered on claims peculiar to herself.  No result for either plaintiff in this

4   litigation appears to this court to have vindicated any broader concern than that of compensation and

5   a statutory award to an individual whose civil rights the jury found were violated by the conduct of a

6   single employee of the homeowner's association.  Neither plaintiff ultimately pursued the punitive

7   damages claims, and neither was successful on claims for equitable relief.  Unlike in <u>Morales</u>, the

8   results of the FHCSD's participation in this litigation furthered no public purpose to protect Reed or

9   others from similar exposure to the type of isolated harassment she endured from one PCOA

10  employee, and sent no particular  message of broader significance to homeowners' associations.  The

11  results obtained by the FHCSD's counsel for his *actual client* is the pertinent consideration.  In this

12  court's view, the extent of success the FHCSD achieved in this litigation, while not measured solely

13  by the amount of damages recovered, must include some measure of benefit within the scope of its

14  mission conferred on others by winning a civil rights case to render an attorneys' fee recovery just here.

15  The fee Application contains no such demonstration.

16       For all the foregoing reasons, the court **OVERRULES** the FHCSD's Objections to the

17  recommended result on the fees portion of its Application and **ADOPTS** the R&R recommendation

18  the FHCSD be denied an award of attorneys fees.

19       The R&R performed no separate costs award analysis in recommending the FHCSD take

20  nothing under its Application.  The court **SUSTAINS** the FHCSD's Objections to the R&R on the

21  issue of costs, and **REJECTS** the summary recommendation the FHCSD recover none of its litigation

22  costs.  Under FED.R.CIV.P. 54(d), costs are allowed "as of course to the prevailing party" absent an

23  instruction from the court otherwise or when express provision regarding costs appears in a statute

24  or federal rules.

25       The PCOA does not specifically challenge any of the line item claimed costs.  The FHCSD

26  represents it "paid for most transcript costs in this litigation," it "purchased equipment for litigation

27  purposes," it "found and contracted with Mr. David Kline, Esq., who provided consultation on case

28  strategy, assisted on plaintiff's motion on jurisdiction, and acted as reader of the depositions during the

- 29 -

05CV0072

first day of trial." FHCSD Appl. 4:13-17. Its itemized list of costs totals $5,209.69. FHCSD Appl. Exh. 4. The court deducts from that total the $59.99 cost item claimed for a "projector table" as a reusable item of furniture. No information about any special qualifications, need for, or reasonableness of the $150.00 hourly rate of David Kline, Esq. is provided to support the $1,500.00 line item cost for ten hours of his "consultation" services "on case strategy" and his additional services to "assist[] on plaintiffs' motion on jurisdiction," particularly when three counsel of record also billed time on the plaintiffs' side of this litigation. FHCSD Appl. 4-17, Exh. 4. Moreover, the court is not persuaded the cost to have the consultant "act as reader of the depositions during the first day of trial" is reasonably taxable to defendant. Id. Accordingly, the court also deducts the $1,500.00 line item for Mr. Kline's costs. In addition, local FHCSD counsel provides no authority to support the claim for travel to the courthouse for seven days of trial at $.35 per mile, in the total amount of $140.63, and the court deducts that line item.

The court has verified the costs claimed in the FHCSD's Application for six "deposition transcripts" (totaling $1,643.14) are not duplicated in Reeds Application. Two additional line item costs are identified as for "depositions." The court assumes those costs (totaling an additional $1,194.10) were for the noticed taking of one and for a transcript of the other, because "copying of depositions" in the claimed amount of $128.57 is listed as a separate line item. FHCSD Appl. Exh. 4. Accordingly, the court **REJECTS** the R&R recommendation that no costs be awarded to prevailing party the FHCSD, but deducts $1,700.62 from the claimed costs, for a total costs award of $3,509.07.

**III.    CONCLUSION AND ORDER**

For all the foregoing reasons, **IT IS HEREBY ORDERED:**

1.    Both sides' Objections to the R&R on prevailing plaintiff Reed's fees and costs Application are **OVERRULED**.

2.    The R&R recommendation Reed be awarded reduced attorneys fees in the amount of $161,000.00 and reduced litigation costs and expenses in the amount of $7,673.83, for a total award of $168,673.83, is **ADOPTED**.

3.    Prevailing plaintiff the FHCSD's Objections to the R&R on its fees and costs Application are **SUSTAINED IN PART** and **OVERRULED IN PART**,

4.      The R&R recommendation the FHCSD be denied any award of attorneys' fees or costs is **ADOPTED IN PART** and **REJECTED IN PART**.

5.      The FHCSD shall recover no attorneys' fees on its Application, but shall recover $3,509.07 in litigation costs.

6.      Within ten (10) days of the date this Order is entered, the parties shall jointly prepare and e-mail to the chambers of the undersigned District Judge a [Proposed] Final Judgment to terminate this action.

**IT IS SO ORDERED**.

DATED:  November 26, 2007

**HONORABLE LARRY ALAN BURNS**
United States District Judge

05CV0072